**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (SMB) |
| | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| CAPITAL GROWTH COMPANY; DECISIONS, INC.; FAVORITE FUNDS; JA PRIMARY LIMITED PARTNERSHIP; JA SPECIAL LIMITED PARTNERSHIP; JAB PARTNERSHIP; JEMW PARTNERSHIP; JF PARTNERSHIP; JFM INVESTMENT COMPANIES; JLN PARTNERSHIP; JMP LIMITED PARTNERSHIP; JEFFRY M. PICOWER SPECIAL COMPANY; JEFFRY M. PICOWER, P.C.; THE PICOWER FOUNDATION; THE PICOWER INSTITUTE OF MEDICAL RESEARCH; THE TRUST F/B/O GABRIELLE H. PICOWER; BARBARA PICOWER, individually and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower, | Adv. Pro. No. 14-02408 (SMB) |
| | **PICOWER PARTIES' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO CONSOLIDATE ADVERSARY PROCEEDINGS** |
| Plaintiffs, | |
| v. | |
| PAMELA GOLDMAN and A & G GOLDMAN PARTNERSHIP, | |
| Defendants. | |

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
*Attorneys for Plaintiffs Picower Parties*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...............................................................................................1

**ARGUMENT**..........................................................................................................................2

I.      The Picower Parties' Action and the Trustee's Action Should Be Consolidated
Because the Legal and Factual Issues in the Two Actions Are Substantially Similar ........2

II.     The Picower Parties Have Standing to Enforce the Permanent Injunction .........................5

**CONCLUSION** .........................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*,
    No. 09 MDL 2058 (DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)....................................2

*E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580*,
    139 F. Supp. 2d 512 (S.D.N.Y. 2001)........................................................................................7

*Horne v. Flores*,
    557 U.S. 433 (2009)................................................................................................. 5-6

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007), *reconsideration granted on other grounds*,
    *In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ..........2

*Lloyd v. Indus. Bio-Test Labs., Inc.*,
    454 F. Supp. 807 (S.D.N.Y. 1978) ................................................................................ 2-3

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013)........................................................................................6

*Mission Critical Solutions v. United States*,
    104 Fed. Cl. 18 (Fed. Cl. 2012) ................................................................................6

*Salazar v. Buono*,
    559 U.S. 700 (2010)................................................................................................5, 6

*Stein, Hall & Co. v. Scindia Steam Nav. Co.*,
    264 F. Supp. 499 (S.D.N.Y. 1967) ............................................................................2

*Werner v. Satterlee, Stephens, Burke & Burke*,
    797 F. Supp. 1196 (S.D.N.Y. 1992)..........................................................................2


**Rules & Other Authorities**

Fed. R. Civ. P. 42(a) ..................................................................................................5

## PRELIMINARY STATEMENT

On November 17, 2014, pursuant to a so-ordered stipulation between the Picower Parties[1] and the Goldmans, the Trustee and the Picower Parties each moved to enforce the Permanent Injunction against the Goldmans.  Attempting a "divide and conquer" strategy, the Goldmans moved to withdraw the reference with respect to the Trustee's Action but not with respect to the Picower Action.  Next, claiming that the two actions are somehow vastly different, the Goldmans opposed consolidation of the two actions.  The Goldmans' strategy smacks of gamesmanship and would unduly burden the courts and the parties.  The Trustee's Action and the Picower Action should be consolidated for one main reason:  each action seeks to apply the Permanent Injunction to Goldman III.  Thus, each will require the Court to determine whether the so-called "control person" claim in Goldman III is duplicative or derivative of the fraudulent transfer claims the Trustee brought against the Picower Parties.  That the Picower Parties also ask the Court for additional relief – to put an end to the Goldmans' wasteful and harassing filings – does not change the fact that the question presented in both actions is exactly the same.  The two actions should be consolidated.

Litigating the same legal and factual issues in two different courts would be a waste of judicial and party resources.  Worse, it could lead to inconsistent results.  For instance, if the Goldmans' motion to withdraw the reference in the Trustee's Action is granted, but the motion the Goldmans state they intend to bring to dismiss the Picower Action for lack of standing is denied, then the District Court and this Court, in two separate actions, each would have to determine if the claim in Goldman III is derivative of the Trustee's Claims.  Similarly, if

---

[1]  Unless defined herein, capitalized terms have the same meaning as defined in the Picower Parties' Motion to Consolidate Adversary Proceedings (ECF No. 7).

the Goldmans' motion to withdraw the reference in the Trustee's Action is denied, absent

consolidation, this Court would have before it two separate adversary proceedings that seek the

same determination with respect to the same plaintiffs, the same Goldman III complaint, and the

same Permanent Injunction.  Following the Goldmans' strategy would be inefficient, duplicative

and would present the risk of inconsistent results.  In short, it would make no sense.

       The more logical, economical and efficient approach is to have the Picower

Action and the Trustee's Action heard before the same court in a consolidated action.  Indeed,

the Trustee consents to having the two actions consolidated.

## ARGUMENT

**I.     The Picower Parties' Action and the Trustee's Action Should Be Consolidated
Because the Legal and Factual Issues in the Two Actions Are Substantially Similar**

       For two actions to be consolidated, the legal and factual issues raised in the

actions need not be identical, they only have to be "substantially similar."  *In re Bank of Am.*

*Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC),

2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010); *Stein, Hall & Co. v. Scindia Steam Nav. Co.*,

264 F. Supp. 499, 501 (S.D.N.Y. 1967); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 92

(S.D.N.Y. 2007) (granting motion for consolidation despite differences in causes of action,

defendants, and class period "[g]iven the overlapping questions of law and fact presented in the

cases"), *reconsideration granted on other grounds*, *In re IMAX Sec. Litig.*, No. 06CIV6128, 2009

WL 1905033 (S.D.N.Y. June 29, 2009); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F.

Supp. 1196, 1211-12 (S.D.N.Y. 1992) (granting motion for consolidation, despite fact that "there

are different parties," "the facts of the two cases are different" and "the cases may be in different

stages," because "[t]here are numerous common issues of law and fact"); *Lloyd v. Indus. Bio-*

*Test Labs., Inc.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978) (granting motion to consolidate despite

fact that two actions involved different securities, different class periods, and different

defendants because "legal and factual issues in both actions are otherwise identical").

      Here, the Picower Action and Trustee's Action arise from the same facts – the

Goldmans' *third* attempt to assert a non-derivative claim against the Picower Parties in

connection with the Madoff fraud.  The two actions are brought against the same parties (the

Goldmans).  The two actions both seek to enjoin the Goldmans from prosecuting Goldman III.

They raise the same legal issue – whether Goldman III is derivative of the Trustee's Claims.

Additionally, consolidating the two actions would not cause any prejudice to the Goldmans.

      According to the Goldmans, the two actions are "dissimilar" because the Picower

Action seeks the additional relief of permanently enjoining the Goldmans from filing any

additional complaints against the Picower Parties.[2]  (Goldman Br. at 4-5.)[3]  The Goldmans argue

that such relief "is separate and distinct from the Permanent Injunction" and "is untethered to the

question of whether [Goldman III] states a bona fide Section 20(a) claim." (*Id.* at 5.)  Yet the

additional relief the Picower Parties seek is directly related to the Permanent Injunction; it, too,

requires a determination of whether the claim in Goldman III is derivative and duplicative of the

Trustee's Claims – the identical issue to be decided in the Trustee's Action.

      Determining that threshold issue is necessary to both of the claims in the Picower

Parties' complaint in this action.  (*See* Complaint, *Capital Growth Co. v. Goldman*, Adv. Pro.

No. 14-02408-smb (Bankr. S.D.N.Y. Nov. 14, 2014), ECF No. 1, ¶¶ 33-36.)  On the one hand, if

---

[2] Although the Trustee's Action does not explicitly seek an order permanently enjoining the Goldmans from filing any additional complaints against the Picower Parties, in support of his application to bar Goldman III from proceeding, the Trustee has stated "with what is now a trilogy, the Trustee respectfully echoes the Picower Parties' assertion that 'enough is enough.'"  (Mem. of Law in Support of Application for Enforcement of the Permanent Injunction & Automatic Stay, *Picard v. A & G Goldman Partnership*, Adv. Pro. No. 14-02407-smb, ECF No. 3, at 4 n.3.)

[3] "Goldman Br." refers to Defendants A & G Goldman Partnership and Pamela Goldman's Response to Plaintiffs' Motion to Consolidate Adversary Proceedings (ECF No. 13).

Goldman III is derivative of the Trustee's Claims, it thereby violates the Permanent Injunction

and the Court need only consider whether, after three failed attempts, and given the costs and

burdens associated with each attempt, the Goldmans should be permanently enjoined from filing

any additional complaints against the Picower Parties because enough is enough.  On the other

hand, if Goldman III is not derivative of the Trustee's Claims, then there is no need to enjoin the

Goldmans from filing another complaint against the Picower Parties; presumably they would

proceed with the complaint in Goldman III.  Accordingly, the legal issues raised in determining

whether the Goldmans should be enjoined from filing any additional complaints against the

Picower Parties are not "dissimilar" to, or "untethered" from, the legal issues raised in the

Trustee's Action; both actions raise the very same legal issue.  The only thing "untethered" here

is the Goldmans' faulty strategy in trying to pursue the same legal issue in two separate courts.

        Notably, the Goldmans are no strangers to the benefits of consolidation.  Indeed,

the Goldmans' counsel, Beasley Hauser Kramer & Galardi, P.A. and Blackner, Stone &

Associates, previously *supported* consolidation of two related actions on similar facts in the

Southern District of Florida, arguing that the Goldmans' prior complaint against the Picower

Parties, Goldman II,[4] should be consolidated with Fox/Marshall II[5] because those two actions

"involve the same legal issue:  whether a proposed class action complaint pleads claims that are

not derivative of [claims belonging to] the BLMIS estate.  The issue should be decided by one

judge" and "[i]t would be a waste of judicial resources and effort for these cases to be heard by

different courts, and doing so would risk inconsistent results."  (Motion for Order of Transfer

and Consolidation, *Marshall v. Capital Growth Co.*, No. 9:10-cv-80252-KLR (S.D. Fla. Feb. 19,

---

[4] "Goldman II" refers to *Goldman v. Capital Growth Co.*, No. 14-cv-80012-KAM (S.D. Fla.).

[5] "Fox/Marshall II" refers to *Marshall v. Capital Growth Co.*, No. 10-cv-80252-KLR (S.D. Fla.).

2014), ECF No. 31, at 5-6.)  Those same arguments, made previously by the Goldmans, apply equally here.

## II.  The Picower Parties Have Standing to Enforce the Permanent Injunction

The Goldmans also argue that consolidation should not be granted because the Picower Parties purportedly lack standing to enforce the Permanent Injunction.  According to the Goldmans, the Picower Parties lack standing because they are "merely an incidental beneficiary" of the Permanent Injunction and lack "any actual or threatened injury" from Goldman III since the Trustee has already brought an action to enforce the Permanent Injunction.  (Goldman Br. at 4.)

The test for consolidation pursuant to Federal Rule of Civil Procedure 42(a) is very basic:  whether two actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  The test under Rule 42(a) is not whether the plaintiffs in one action have standing. Because the Rule 42(a) standard is met here, the Picower Action and the Trustee's Action should be consolidated.  Then, if the Goldmans still seek to dismiss the Picower Action on standing grounds, they can make their motion in the consolidated action.  Following that procedure would have the added benefit of permitting both the Picower Parties and the Trustee, the intended beneficiaries of the Permanent Injunction, to address the Goldmans' spurious standing arguments.

In any event, the Picower Parties plainly have standing to enforce the Permanent Injunction.  "To demonstrate standing, a plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."  *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (internal quotation marks omitted).  To establish standing, a plaintiff must present (i) "an injury that is concrete, particularized, and actual or imminent"; (ii) "fairly traceable to the defendant's challenged action"; and (iii) "redressable by a favorable

ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). "The injury-in-fact requirement is satisfied

when the plaintiff has suffered an invasion of a legally protected interest, which is (a) concrete

and particularized and (b) actual or imminent, not conjectural or hypothetical." *In re Methyl*

*Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) (internal

quotation marks omitted).

        In *Salazar*, the plaintiff had obtained an injunction in a prior action. After final

judgment, he brought a motion to enforce the injunction. The Supreme Court found that he had

standing to enforce the injunction because "[a] party that obtains a judgment in its favor acquires

a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar*, 559 U.S.

at 711-12. Thus, "[h]aving obtained a final judgment granting relief on his claims, [plaintiff] had

standing to seek its vindication." *Id.* at 712; *see also Mission Critical Solutions v. United States*,

104 Fed. Cl. 18, 25 (Fed. Cl. 2012) ("[W]here plaintiff obtained a final judgment on its claims in

[a prior action], which provided the basis for the court's injunction, there can be no doubt that

plaintiff now has standing to seek its vindication.") (internal quotation marks and alteration

omitted). As in *Mission Critical Solutions*, "[i]f [the Goldmans are], in fact, violating the court's

injunction entered in [the Picower Parties'] favor, this would be an 'injury in fact' which is both

concrete and particularized and actual or imminent." *See Mission Critical Solutions*, 104 Fed.

Cl. at 25.

        Here, contrary to the Goldmans' assertion that the Picower Parties are merely

"incidental" beneficiaries of the Permanent Injunction, the Permanent Injunction was obtained, at

least in part, to benefit the Picower Parties, and it expressly identifies the Picower Parties as

direct beneficiaries:

> [A]ny BLMIS customer or creditor of the BLMIS estate . . . is
> hereby permanently enjoined from asserting any claim against the

> Picower BLMIS Accounts or the Picower Releasees that is
> duplicative or derivative of the claims brought by the Trustee, or
> which could have been brought by the Trustee against the Picower
> BLMIS Accounts or the Picower Releasees . . . .

(Harris Decl. Ex. 2 at 7).[6]  This Court issued the Permanent Injunction in an order approving the

Settlement Agreement between the Trustee and the Picower Parties to resolve the adversary

proceeding that the Trustee brought against the Picower Parties.[7]  The Picower Parties are

intended and named beneficiaries of the Permanent Injunction with an actual, concrete and

particularized legally-protected interest under the Permanent Injunction.

Moreover, even if the Picower Parties were merely "incidental" beneficiaries of

the Permanent Injunction, the Picower Parties nevertheless would have standing to enforce the

Permanent Injunction because they plainly come within the "zone-of-interests" protected by the

Permanent Injunction.  *See E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental

Ironworkers, Local 580*, 139 F. Supp. 2d 512, 521 (S.D.N.Y. 2001) (third-party beneficiaries of

consent judgment and subsequent orders had standing to enforce orders because complaints came

"within the zone-of-interests protected by the orders," and orders were obtained and intended to

benefit class that included third party beneficiaries).

In the Trustee's prior action to enforce the Permanent Injunction to bar Goldman

II and Fox/Marshall II, this Court granted the Picower Parties' motion to intervene and file an

intervenors' complaint to enforce the Permanent Injunction.  (*Picard v. Marshall*, Adv. Pro. No.

14-01840-smb (Bankr. S.D.N.Y. May 22, 2014), ECF No. 45.)  Notably, the Goldmans did not

---

[6] "Harris Decl." refers to the Declaration of Marcy Ressler Harris, dated Nov. 17, 2014, in support of the Picower Parties' Application for Enforcement of the Permanent Injunction (ECF No. 4).

[7] A copy of the Settlement Agreement is attached to the Declaration of Keith R. Murphy in Support of Application for Enforcement of the Permanent Injunction and Automatic Stay, dated Nov. 17, 2014 (*Picard v. A & G Goldman Partnership*, Adv. Pro. No. 14-02407-smb, ECF No. 4) as Exhibit D.  Under the Settlement Agreement, the definition of the "Picower Releasees" includes every one of the Picower Parties in this action.  (*See* Settlement Agreement, Attachment C).)

oppose the Picower Parties' motion to intervene or challenge their standing to enforce the Permanent Injunction at that time.  Moreover, in that action, this Court recognized that "the [P]ermanent [I]njunction runs solely to the benefit of the [Picowers]" and "but for [the] contractual provision [that the Trustee would use his reasonable best efforts to enforce the Permanent Injunction, the Picower Parties] would always be the beneficiaries of the injunction . . . who would bring this type of motion."  (*Picard v. Marshall*, Adv. Pro. No. 14-01840-smb (Bankr. S.D.N.Y. May 5, 2014), ECF No. 43, at 20, 21.)  There is no plausible reason for the Goldmans to challenge the Picower Parties' standing to enforce the Permanent Injunction to bar Goldman III, when they failed to object to the Picower Parties' standing to enforce the very same Permanent Injunction to bar Goldman II.

Finally, the Goldmans' assertion that the Picower Parties lack "any actual or threatened injury" from Goldman III since the Trustee has brought his own action to enjoin Goldman III (Goldman Br. at 4) is incorrect.  The Goldman III complaint seeks approximately $11 billion in damages directly from the Picower Parties.  (*See* Goldman III ¶¶ 97-98.)[8]  Thus, the Picower Parties clearly have a threatened injury-in-fact sufficient to confer standing on them.

---

[8]   While the Goldmans argue that Goldman III is not derivative of the Trustee's Claims, they seek in damages the exact amount of damages that the Trustee is seeking in his fraudulent conveyance actions against BLMIS customers ($18 million less the $7.2 billion that the Picower Parties forfeited at the time they entered into the Settlement Agreement).

## CONCLUSION

For the foregoing reasons and the reasons stated in the Picower Parties' opening brief, the Picower Parties respectfully request that the Court enter an order consolidating the Picower Action and Trustee's Action.

Dated:  New York, New York
       December 10, 2014

**SCHULTE ROTH & ZABEL LLP**

By: /s/ Marcy Ressler Harris
    William D. Zabel
    Marcy Ressler Harris
    Michael Kwon
    Jennifer M. Opheim

919 Third Avenue
New York, New York  10022
(212) 756-2000

*Attorneys for Plaintiffs Picower Parties*